# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TANYA JACKSON, AS NEXT FRIEND ON BEHALF OF HER MINOR CHILDREN, Z.J. AND Y.J., <br>    *Plaintiffs*, <br><br> v. <br><br> CITY OF MIDDLETOWN, *et al.*, <br>    *Defendants*. | No. 3:11-cv-00725 (JAM) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiffs Z.J. and Y.J. were high school students in Middletown, Connecticut. One day during lunch at the school cafeteria, Z.J. was accused of stealing a beef patty from the serving line. After a cafeteria worker complained, one of the school's "resource officers" tackled Z.J. and slammed him to the ground. Another resource officer approached and repeatedly tased Z.J. In the meantime, Y.J. was in the cafeteria and saw what happened to his brother.

Plaintiffs, Tanya Jackson, on behalf of her children, Z.J. and Y.J., brought this civil action against defendants City of Middletown, Middletown Police Department, Middletown Public Schools, and the two school resource officers—Kurt Scrivo, and Alex Rodriguez. Doc. #1. Defendants move for summary judgment with respect to plaintiffs' numerous claims. For the reasons set forth below, I will grant in part and deny in part defendants' motion for summary judgment. Trial shall proceed solely as to Z.J.'s claims against defendants Rodriguez and Scrivo for excessive force, assault and battery, and intentional and negligent infliction of emotional distress. All other claims and defendants are dismissed.

### BACKGROUND

The following facts are either agreed upon by both parties or presented in the light most favorable to plaintiffs as the non-moving parties. On September 3, 2010, Z.J. and Y.J. were

students at Middletown High School. On that day, Z.J. was at the school cafeteria and he took a beef patty without paying. A cashier called Z.J. back and asked him whether he had paid for the patty. Z.J. said no. When the cashier asked Z.J. to give the patty back, Z.J. put the patty into her hand. This provoked an argument between Z.J. and the cashier, and Z.J. eventually called the cashier a "bitch." The cashier called a security officer over and said that Z.J. needed to go to the security office. But Z.J. protested, asking why he had to go to the security office if he had already returned the beef patty.

At that point, defendant Scrivo—a school resource officer who is a state-certified police officer employed by a municipal police department—approached the scene. He told Z.J. to go with the security officer, but Z.J. continued to question why he had to go. The security officer then told Z.J. to go with him, and Z.J. said "okay" and began walking with the officer. But just as Z.J. and the security officer were walking away, Scrivo placed his hand on Z.J.'s left shoulder and right side in order to escort him out of the cafeteria. In response, Z.J. stated, "You don't need to touch me. Let me go. I can walk by myself. I'm not a little boy." Scrivo let go of Z.J., who continued walking. Two seconds later, however, Scrivo suddenly used a bear hug tackle to slam Z.J. to the ground. Z.J. told Scrivo to get off of him, but Scrivo then attempted to arrest Z.J. by grabbing his arms from behind and telling Z.J. to "stop."

Defendant Rodriguez—another school resource officer—saw Scrivo and Z.J. on the ground and made his way over from about three to five car lengths away. He believed that Z.J. was being noncompliant with Scrivo, so he pulled his taser out as he approached. It can be reasonably inferred from Scrivo's police report that Scrivo saw Rodriguez approach, and saw Rodriguez remove his taser and prepare the taser for drive stun mode. Doc. #101-2 at 2. Rodriguez then deployed his taser on Z.J.'s chest area without warning, eventually tasing Z.J. at

2

least six times all over his body, while saying, "who's the bitch now?" The length of time from when Z.J. and Scrivo were on the floor and when Rodriguez deployed his taser was only a few seconds. While he was being tased, Z.J. blacked out, made involuntary movements caused from the shock, and was foaming out of his mouth.

The officers handcuffed Z.J. on the floor, and they walked him out of the cafeteria. Rodriguez patted Z.J. down near the police cruiser, and asked Z.J. to take off his shoes. Z.J. asked why, but Rodriguez again ordered Z.J. to take his shoes off, and Z.J. said, "No, I don't need to take them off. You can just put me in the car." Rodriguez then grabbed Z.J., slammed him to the ground, and took off Z.J.'s shoes.

Z.J. was eventually charged with larceny in the sixth degree, Conn. Gen. Stat. § 53a-125b, breach of the peace, Conn. Gen. Stat. § 53a-181, and interfering with police, Conn. Gen. Stat. § 53a-167a. After he pled no contest to interfering with the police, the other charges were *nolled*. According to Z.J., he sustained bruises on his back, stomach, and chest from the encounter, but those injuries resolved after about a week. He did not seek help from a mental health professional about the incident.

Z.J.'s younger brother, Y.J., witnessed the altercation in the cafeteria from about 15 feet away. When he saw Rodriguez deploy his taser, he yelled out "Get off my brother! . . . Why are you tasing my brother?" Y.J. was pulled away from the area by security officers, but he did not sustain injuries or have any physical interactions with Rodriguez or Scrivo. Y.J. was eventually arrested and brought to the police station.

After his mother—plaintiff Tanya Jackson—picked him up and as they were walking away from the police station, Y.J. kicked a sign that was in front of the police station that was advertising a blood drive. Jackson began to yell at him and pushed him. Both Y.J. and Jackson

were then arrested and charged with breach of the peace, Conn. Gen. Stat. § 53a-181. Y.J. was also charged with interfering with police, Conn. Gen. Stat. § 53a-167a, and possession of four ounces of marijuana. The charges against Y.J. and Jackson were *nolled* after they completed community service.

Jackson, on behalf of her children Z.J. and Y.J., brought suit against various defendants for constitutional violations, assault and battery, false arrest, and infliction of emotional distress. *See* Doc. #1. Many of these claims have been abandoned, and defendants move for summary judgment on any claims not abandoned by plaintiff.[1] The remaining non-abandoned claims include Z.J.'s claims against Scrivo and Rodriguez for excessive force in violation of the Fourth Amendment, as well as Z.J.'s state law claims for assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. Both Z.J. and Y.J. also claim false arrest.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any

---

[1] At oral argument, plaintiffs abandoned any claims not briefed in opposition to defendants' motion for summary judgment, which include claims: (1) asserting violations of the Fifth Amendment and the Fourteenth Amendment (other than a violation of the Fourteenth Amendment insofar as it incorporates the Fourth Amendment against Connecticut state actors); (2) asserting *Monell* liability against the City of Middletown; (4) asserting violations of the Connecticut Constitution; (5) against John Does 1–3 for their interactions with Y.J. (Second, Sixth, and Tenth Counts, including for negligent infliction of emotional distress); (6) against John Does 1–3 for their interactions with Z.J. (Ninth Count); (7) against Scrivo and Rodriguez for Z.J.'s false arrest and imprisonment (Fifth Count); (8) against the officers in their official capacities; and (9) against the City of Middletown and the Middletown Police Department (Third Count). I will grant summary judgment with respect to those claims. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). If plaintiffs believe that the Court has mistakenly deemed as abandoned any claims that were properly alleged and preserved, then plaintiffs may file a timely motion for reconsideration.
 Defendants also move for summary judgment with respect to any possible claims by plaintiff Tanya Jackson arising from her own arrest. Although Jackson stresses the inequity of her arrest and asserts that this is relevant evidence of the officers' intimidation of the entire Jackson family, the complaint does not contain a count alleging that she was subject to a false arrest. Accordingly, to the extent that Jackson might claim that she has any cause of action independent of any claim by her children, I will grant summary judgment for defendants on any such claim.

material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### *Excessive Force*

Z.J. asserts that he was subjected to excessive force when he was tackled by Scrivo and repeatedly tased by Rodriguez.[2] The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Because the Fourth Amendment protects against unreasonable seizures, it has long been recognized that the Fourth Amendment is violated when the police use excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386 (1989).

As the Supreme Court has explained, whether law enforcement officers' use of force is "excessive" must be judged by "whether the officers' actions are objectively reasonable in light

---

[2] At oral argument, plaintiff's counsel conceded that she is not pursuing any claim of excessive force by Rodriguez for tackling Z.J. at the police cruiser after he refused to take off his shoes.

5

of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97; *see also Brown v. City of New York*, 798 F.3d 94, 100–03 (2d Cir. 2015) (discussing Fourth Amendment standard for excessive force claims).

Defendants argue that any excessive force claim must fail as a matter of law, because Z.J. sustained only *de minimis* injuries as a result of being tackled by Scrivo and tased by Rodriguez.[3] *See* Doc. #91-1 at 20–21. I do not agree that the absence of more than a *de minimis* injury necessarily forecloses a claim of excessive force under the Fourth Amendment. As the Supreme Court has stated, albeit in a slightly different context, "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (*per curiam*). Accordingly, the Supreme Court in *Wilkins* reversed a lower court judgment that had "dismissed a prisoner's excessive force claim based entirely on its determination that his injuries were '*de minimis*,'" and made clear that the proper inquiry for an excessive force claim should be "based on the nature of the force rather than the extent of the injury." *Id.* at 34.

It is true that *Wilkins* considered the legal standard for an excessive force claim under the Eighth Amendment rather than the Fourth Amendment. But that distinction only hurts the

---

[3] Apart from their argument that the lack of a more-than-*de-minimis* injury forecloses an excessive force claim, defendants do not otherwise argue for purposes of summary judgment that there is no genuine issue of fact that the force used against Z.J. was excessive.

6

defendants' argument, because the Supreme Court has otherwise made clear that the governing standard under the Eighth Amendment is even "less protective" of a plaintiff than the standard under the Fourth Amendment. *Graham*, 490 U.S. at 398; *Rentas v. Ruffin*, 816 F.3d 214, 225 (2d Cir. 2016) (same); *see also Bryant v. Meriden Police Dept.*, 2017 WL 1217090, at *5–*6 (D. Conn. 2017) (discussing distinction between excessive force claims under the Fourth and Eighth Amendments).

Because a plaintiff alleging an excessive force claim under the Eighth Amendment need not demonstrate a more-than-*de-minimis* injury, it necessarily follows that there is no basis to conclude that a Fourth Amendment claim for excessive force requires proof of more than a *de minimis* injury. *See Barcomb v. Kraeger*, 2016 WL 2644885, at *4–*5 & n.8 (D. Conn. 2016) (rejecting more-than-*de-minimis*-injury requirement for Fourth Amendment excessive force claim and noting that "[a]lthough *Wilkins* discussed excessive force claims under the Eighth Amendment, this Court, like several Circuit courts, can 'see no reason why the same rationale should not apply in a Fourth Amendment excessive force case'") (quoting *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014)).

Defendants similarly rely on the lack of a more-than-*de-minimis* injury to argue that they are entitled to qualified immunity. Doc. #91 at 21. "A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *See Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015). The Second Circuit has noted that "[t]o determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme

7

Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014).

Defendants do not cite any case authority from the Supreme Court or the Second Circuit to support their contention that the law was not clearly established, as of the date of this incident in September 2010, that a Fourth Amendment claim for the use of excessive force does not require a showing of more-than-*de-minimis* injury. For this reason alone, I reject defendants' qualified immunity argument. It will not suffice for a defendant to claim a lack of clearly established law and then to do nothing to show what the relevant state of the law was at the time of the incident in question (*i.e.*, to cite pre-existing precedent that an objectively reasonable officer could have reasonably understood at the time to render his conduct lawful).[4] Courts faced with qualified immunity claims should not be required *sua sponte* to conduct their own forensic reconstruction of the state of the law when confronted with a defendant's claim that the law was not clearly established at the time that he acted.

In any event, I conclude that an objectively reasonable officer could not have plausibly believed in September 2010 that he was at liberty to gratuitously inflict force and pain on a high school student so long as he took care to refrain from leaving the student with a lasting injury. Indeed, several months before the incident at issue in this case, the Supreme Court ruled in *Wilkins v. Gaddy*—as discussed above—that the lack of a serious injury did not defeat a prisoner's claim for excessive force under the Eighth Amendment. *See* 559 U.S. at 38; *see also Abreu v. Nicholls*, 368 F. App'x. 191, 193 (2d Cir. 2010) (decision of March 3, 2010, noting that

---

[4] Rather than citing any cases holding that a Fourth Amendment excessive force claim requires an injury that is more than *de minimis*, defendants cite various district court cases for the proposition that *the amount of force used* must be more than *de minimis*. *See* Doc. #91-1 at 20. These cases do not further state that there must also be more than a *de minimis* injury, and defendants do not seriously contend that tackling someone and tasing them six times involves a mere *de minimis* amount of force.

8

"[a]lthough the extent of injury is a relevant factor, it is not a threshold requirement for an excessive force claim" under the Eighth Amendment).

Although *Wilkins* and *Abreu* involved excessive force claims under the Eighth Amendment rather than an excessive force claim under the Fourth Amendment, defendants do nothing to show that an objectively reasonable officer could have believed that the standard for treating free citizens (and high school students) under the Fourth Amendment would be less demanding than the standard for treating prisoners under the Eighth Amendment. An objectively reasonable officer in September 2010 would have known that he had even less latitude to use force against a high school student like the plaintiff in this case than against a convicted prisoner.

The Court's own research of Second Circuit case law does not disclose decisions prior to September 2010 suggesting that a Fourth Amendment claim for excessive force necessarily required more than the infliction of a *de minimis* injury. The Second Circuit's precedent at that time appears to point in the opposite direction. *See, e.g.*, *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (noting in part that "we have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising"); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("While Robison did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, this failure is not fatal to her claim. If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). Defendants Scrivo and Rodriguez are not entitled to qualified immunity because they have not shown that an objectively reasonable officer could have believed as of September 2010

that the Fourth Amendment allowed them to gratuitously use force on a high school student so long as they did not inflict a more-than-*de-minimis* injury.[5]

A genuine fact issue likewise remains regarding Scrivo's failure to intervene to prevent Rodriguez from deploying his taser. The Second Circuit has recently reiterated that "[a] police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it. Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). The same rule was clearly established as of September 2010. *See, e.g.*, *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Although Scrivo asserts that he had no realistic opportunity to intervene because he did not see the taser until Rodriguez had begun to use it, it can be reasonably inferred from Scrivo's police report that Scrivo saw Rodriguez approach with taser in hand. Doc. #101-2 at 2. I will deny defendants' motion for summary judgment on Z.J.'s excessive force claim.

*Assault and Battery*

For Z.J.'s claim of assault and battery under Connecticut common law, I will deny summary judgment. This claim survives for the same reasons that the excessive force claim survives. *See, e.g.*, *Greene v. City of Norwalk*, 2017 WL 1086174, at *10 (D. Conn. 2017).

---

[5] Defendants do not cite the Eighth Circuit's decision in *Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011), which upheld a claim of qualified immunity on grounds that the law was not clearly established in 2005 that a Fourth Amendment excessive force claim requires a showing of a more-than-*de-minimis* injury. I conclude that *Chambers* is distinguishable. The defendants in the case before me were bound by the law of the Second Circuit rather than the Eighth Circuit, and the law of the Eighth Circuit was unclear on this issue, see *id.* at 908, in a manner that the Second Circuit's law was not. Defendants have not cited any similar ruling of the Second Circuit that remained good law as of September 2010. In any event, even if there had been uncertainty in the Eighth Circuit about the proper legal standard in 2005, there was no remaining uncertainty following the Supreme Court's decision in *Wilkins v. Gaddy* in February 2010.

*Emotional Distress*

For Z.J.'s claim of intentional infliction of emotional distress, he must ultimately prove "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000). Defendants move for summary judgment on the last of these elements, arguing that no reasonable jury could conclude that Z.J. experienced "severe" emotional distress because he never sought treatment by a mental health provider regarding the cafeteria incident. *See* Doc. #91-1 at 36. But defendants have not cited precedent that requires a plaintiff to have sought medical treatment in order to prove the severity of his emotional distress. The cases run to the contrary. *See, e.g.*, *Berry v. Loiseau*, 223 Conn. 786, 811 (1992) (noting that "an award of damages for emotional distress may be valid even though it is not substantially based on incurred medical expenses"); *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) ("Just as the fact of treatment is not sufficient to prove the existence of severe emotional distress, the absence of treatment does not preclude proof of severe emotional distress.").

If Z.J.'s account of what happened to him at the cafeteria is true, a jury could easily conclude that any reasonable person would feel a great degree of emotional distress. Z.J. testified that, after the cafeteria incident, "everything just went downhill; . . . I couldn't get a job . . . [or] walk across the stage to graduate. . . . I couldn't do nothing. I just felt like they just -- just -- I should say just went overboard with everything that happened." Doc. #91-4 at 8. A genuine fact issue remains to support Z.J.'s claim for intentional infliction of emotional distress.

For Z.J.'s claim of negligent infliction of emotional distress, he must show "that the defendant[s] should have realized that [their] conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. . . . [Any] fear or distress experienced by the plaintiffs [must] be reasonable in light of the conduct of the defendants. If such a fear were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446–47 (2003); *Edelson v. Chapel Haven, Inc.*, 2017 WL 810274, at *20 (D. Conn. 2017) (same).

Defendants contend that Z.J.'s negligence claim is foreclosed by the fact that he has alleged that the officers engaged in intentional misconduct. I do not agree, because—as I have previously ruled—this argument ignores the well-established rule that a plaintiff may proceed on inconsistent theories of liability. *See Bussolari v. City of Hartford*, 2016 WL 4272419, at *2–*4 (D. Conn. 2016).

Defendants further argue that they have governmental immunity from Z.J.'s claim for negligent infliction of emotional distress. Again, I do not agree. A genuine fact issue remains concerning whether the identifiable-person/imminent-harm exception to the governmental immunity doctrine applies here. *See id.* at *4; *see also Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 367 (D. Conn. 2008). Viewing the evidence in the light most favorable to Z.J., he was clearly identified to Scrivo and Rodriguez, and both defendants were public officials who knew that their conduct would likely subject him to imminent harm by tackling him and then tasing

him repeatedly. The facts easily satisfy the test for the identifiable-person/imminent-harm exception to governmental immunity.[6]

### *False Arrest*

Lastly, plaintiffs Z.J. and Y.J. allege state law claims for false arrest/imprisonment. "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Ozga v. Elliot*, 150 F. Supp. 3d 178, 187 (D. Conn. 2015) (quoting *Green v. Donroe*, 186 Conn. 265, 267 (1982)). In order to prevail on a claim for false arrest/imprisonment, a plaintiff must show that "(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 443 (D. Conn. 2013).

I conclude that no genuine fact issue remains whether Scrivo and Rodriguez had probable cause to arrest Z.J. Indeed, Z.J. eventually entered a plea of *nolo contendere* to the charge of interfering with the police, and there is no doubt that defendants could also have reasonably believed that he was subject at the least to arrest for larceny for his removal of the beef patty. Similarly, I conclude that there is no genuine fact issue of probable cause to have arrested Y.J. for breach of peace on the ground that he intentionally kicked the sign outside the police station. Although I do not suggest that the arrests were necessarily a wise exercise of police discretion, the only consideration now before me is whether the arrests were supported by probable cause.

---

[6] I do not read the complaint as alleging a claim by Y.J. of negligent infliction of emotional distress against Scrivo and Rodriguez, as distinct from any claims against John Doe officers at the police station. *See* Doc. #1 (Tenth Count). To the extent the complaint can be read to allege this claim, and the claim was not abandoned notwithstanding one stray reference to this claim in plaintiff's briefing, *see* footnote 1; *compare* Doc. #101 at 17 (entitled "Negligent Infliction of Emotional Distress to Z.J."), *with* Doc. #101 at 18 (arguing that tasing Z.J. negligently inflicted emotional distress on Y.J.), I would grant summary judgment because the claim is barred by governmental immunity to the extent it is premised on the fact that Y.J. saw his brother being injured. There are no facts in the record to suggest that Y.J., who was standing across the cafeteria and being restrained by a non-defendant, was an identifiable victim in the eyes of Scrivo and Rodriguez.

Accordingly, for lack of any genuine fact issue to negate the existence of probable cause, I will grant the defendants' motion for summary judgment with respect to the state law claims of false arrest/imprisonment.

I also conclude, as an alternative basis to grant defendants' motion for summary judgment, that Z.J.'s and Y.J.'s claims for false arrest fail for lack of favorable termination to the extent favorable termination is an element of a claim for false arrest under Connecticut law. *See Miles v. City of Hartford*, 719 F. Supp. 2d 207, 212–13 (D. Conn. 2010), *aff'd*, 445 F. App'x. 379 (2d Cir. 2011). Z.J.'s charges did not terminate in his favor because he pled *nolo contendere* to one charge, and the others were *nolled*. *See* Doc. #91-6 at 2; *Roberts v. Babkiewicz*, 582 F.3d 418, 420–22 (2d Cir. 2009); *see also Azana v. City of West Haven*, 2012 WL 264559, at *7–*8 (D. Conn. 2012) (no favorable termination where plea of *nolo contendere*); *Charles v. Johnson*, 2015 WL 4509389, at *2 (D. Conn. 2015) (same). Y.J.'s charges did not terminate in his favor because they were *nolled* by the state in consideration for Y.J.'s completion of a written essay and community service. *See* Doc. #91-5 at 28–29; *Roberts*, 582 F.3d at 420–22. I will grant the defendants' motion for summary judgment with respect to the state law claims of false arrest/imprisonment.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Doc. #91) is GRANTED in part and DENIED in part. Trial shall proceed solely as to Z.J.'s claims against defendants Rodriguez and Scrivo for excessive force, assault and battery, and intentional and negligent infliction of emotional distress. All other claims and defendants are dismissed. The parties shall file their joint trial memorandum on or before June 23, 2017, and the Court shall thereafter set a date for trial.

It is so ordered.

Dated at New Haven, Connecticut, this 19th day of May 2017.

                                                                          **/s/** *Jeffrey Alker Meyer*
                                                                          Jeffrey Alker Meyer
                                                                          United States District Judge